[Cite as *State v. Dawson*, 2017-Ohio-2833.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28311 |
| --- | --- |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS DAWSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2015 12 3878 |

DECISION AND JOURNAL ENTRY

Dated: May 17, 2017

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Thomas Dawson, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On December 14, 2015, Mr. Dawson checked into a hotel in Fairlawn. That evening, he took one of his prescription sleeping pills before heading to the hotel bar to order dinner. In addition to ordering a meal, Mr. Dawson ordered and drank three double shots of Crown Royal within approximately one hour. He paid his bill at 8:32 p.m. and then left the bar.

{¶3} The hotel where Mr. Dawson was staying is connected to Hyde Park Grille, a fine dining steakhouse that also has a bar area. Sometime between 9:30 p.m. and 9:45 p.m., Mr. Dawson entered the restaurant and sat down at the bar. He had in his hand a plastic bag containing a bottle of water. While at the bar, Mr. Dawson attempted to order a Crown Royal, but the bartender determined that he was intoxicated and refused to serve him. The bartender

specified that Mr. Dawson's speech was slurred and that he was saying things that did not make sense. He, therefore, decided to call his manager so that they could ask Mr. Dawson to leave the restaurant. The manager arrived shortly thereafter and learned that Mr. Dawson was a guest at the adjoining hotel. After verifying that Mr. Dawson was, in fact, a guest at the hotel, he offered assistance to help Mr. Dawson to his room. Mr. Dawson, however, declined the offer. A short while later, he removed the water bottle from his plastic bag, placed the bag on his head, and walked out of the restaurant. Before closing the restaurant, the manager warned the bartender at the adjoining hotel not to serve Mr. Dawson.

{¶4} At some point close to 11:00 p.m., Mr. Dawson returned to the bar at his hotel and attempted to order a Crown Royal. Remembering the caution she had received from the manager at Hyde Park Grille, the bartender informed Mr. Dawson that the bar was closed. Mr. Dawson then left the bar area.

{¶5} Between 11:10 p.m. and 11:15 p.m., the manager at Hyde Park Grille closed the restaurant for the evening, set the alarms, and left immediately thereafter. At 11:18 p.m., someone triggered the front door alarm. Multiple motion sensors were then triggered inside the restaurant during the next few minutes. The police arrived at 11:31 p.m. and discovered that someone had used a large planter to break a glass panel in the restaurant's front door. The door itself was partially opened and shattered glass covered the entryway. As the police went inside, they smelled smoke throughout the restaurant and discovered that someone had turned on the burners in the kitchen, causing the pans on top to heat up and burn the grease inside them. They also discovered that someone had broken glasses, torn down a large partition, destroyed several pieces of crown molding, ripped wiring out of the wall, and caused other damage. After a few minutes of searching, they discovered Mr. Dawson wandering around inside the kitchen area of

the restaurant. At the time, Mr. Dawson was shirtless and carrying a plastic bag that contained a receipt from a nearby gas station. The police later found his discarded sweatshirt at the gas station.

{¶6} Mr. Dawson told the police that he had been inside the restaurant for about 15 to 20 minutes. The police found that Mr. Dawson was having difficulty coordinating his thoughts and seemed confused. After learning he was diabetic, they called the paramedics, and Mr. Dawson was taken to the hospital. A detective interviewed him the following morning, at which point Mr. Dawson admitted that he had used a planter to break the glass in the door at Hyde Park Grille. He also admitted that he had pulled down a picture frame after he went inside. Mr. Dawson claimed that he could not remember what happened after he went inside, but denied that he had caused all of the damage inside the restaurant. He told the police that he had felt compelled to enter the restaurant because he heard a commotion inside or, possibly, a woman yelling.

{¶7} A grand jury indicted Mr. Dawson on two counts of breaking and entering, two counts of vandalism, and one count of criminal damaging. Before trial, the court dismissed one count of breaking and entering and one count of vandalism at the State's request. The jury then heard the remaining three counts and found Mr. Dawson guilty. With regard to his vandalism count, the jury found that the value of the property destroyed or involved did not exceed $7,500. The trial court sentenced Mr. Dawson to a total of nine months in prison on his three counts. Additionally, it ordered him to pay Hyde Park Grille $7,499 in restitution.

{¶8} Mr. Dawson now appeals from his convictions and raises eight assignments of error for our review. For ease of analysis, we rearrange and consolidate several of the assignments of error.

II.

## ASSIGNMENT OF ERROR ONE

TRIAL COUNSEL WAS INEFFECTIVE WHERE COUNSEL FAILED TO REFER MR. DAWSON FOR PARTICIPATION IN THE INTERVENTION IN LIEU PROGRAM.

**{¶9}** In his first assignment of error, Mr. Dawson argues that he received ineffective assistance of counsel because his counsel failed to request on his behalf intervention in lieu of conviction ("ILC"). We do not agree that Mr. Dawson has established ineffective assistance of counsel.

**{¶10}** To prove ineffective assistance of counsel, Mr. Dawson must establish that (1) his counsel's performance was deficient, and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, he must prove that "there exists a reasonable probability that, were it not for counsel's [deficient performance], the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. This Court need not address both prongs of *Strickland* if Mr. Dawson fails to prove either one. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

**{¶11}** "ILC is a statutory creation that allows a trial court to stay a criminal proceeding and order an offender to a period of rehabilitation if the court has reason to believe that drug or alcohol usage was a factor leading to the offense." *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶ 9, citing R.C. 2951.041(A)(1). "R.C. 2951.041(B) lists the criteria that a criminal defendant must meet to be eligible for ILC. 'If an offender satisfies all of the statutory eligibility requirements for intervention, the trial court has discretion to determine whether a particular offender is a good candidate for intervention.'" *Massien* at ¶ 11, quoting *State v. Geraci*, 10th

Dist. Franklin No. 04AP-26, 2004-Ohio-6128, ¶ 5. Because the ILC statute "is permissive in nature [it] confers substantial discretion to the trial court to grant a defendant's request * * *." *State v. Bellman*, 9th Dist. Lorain No. 15CA010525, 2015-Ohio-2303, ¶ 10.

{¶12} According to Mr. Dawson, his trial counsel was ineffective because he failed to understand that he could seek ILC on Mr. Dawson's behalf without the State's consent. Mr. Dawson argues that the State made ILC a part of its initial plea offer, but that offer was contingent upon his paying an excessive amount of restitution that he could not afford. He argues that he was prejudiced when defense counsel failed to request ILC on his behalf, regardless of the State's offer. He asserts that, had his counsel done so, he would be in a treatment program rather than serving the harsher penalty that the trial court ultimately imposed.

{¶13} Even if defense counsel had requested ILC on Mr. Dawson's behalf, it is entirely unclear from the record that the court ultimately would have granted his request. R.C. 2951.041(B) contains ten different eligibility requirements for ILC. Mr. Dawson, however, has not discussed the applicability of any of the ten eligibility factors. *See* App.R. 16(A)(7). Nor has he addressed the matter of the trial court's substantial discretion in light of certain statements that the court made at the sentencing hearing. *See Bellman* at ¶ 10

{¶14} At the sentencing hearing, defense counsel strongly argued for community control and a suspended sentence. Several individuals also came forward to speak on Mr. Dawson's behalf. The court listened to the arguments for lenity, but then broached the subject of Mr. Dawson's presentence investigation report.[1] The court expressed its concern with his prior criminal history, which included convictions for OVI in Ohio in 2006, public alcohol intoxication in Kentucky in 2009, disorderly conduct in Michigan in 2014, and OVI in Indiana in

---

[1] The record does not contain the presentence investigation report.

2015. Likewise, the court expressed its concern that Mr. Dawson had refused an offer to resolve his 2015 case through a drug court in Indiana.[2] The court noted that the property damage Mr. Dawson had caused was extensive. Due to the seriousness of his crime and his history of recidivism, the court determined that a community control sentence would demean the seriousness of his crimes. As such, it sentenced him to a prison term and ordered him to pay restitution.

{¶15} As this Court has repeatedly recognized, "[s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *State v. Buzek*, 9th Dist. Medina No. 14CA0011-M, 2015-Ohio-4416, ¶ 7, quoting *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 4. Mr. Dawson has made no attempt to explain why he met each of R.C. 2951.041(B)'s eligibility requirements or why, in light of the foregoing concerns, the trial court nonetheless would have concluded that he was "'a good candidate for intervention.'" *Massien* at ¶ 11, quoting *Geraci* at ¶ 5. *See also State v. Jones*, 6th Dist. Wood No. WD-12-053, 2013-Ohio-3562, ¶ 22. This Court will not construct an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."). Because Mr. Dawson's argument is purely speculative, he has not established that he received ineffective assistance of counsel due to his counsel's failure to request ILC independently of the State's plea offer. *See State v. Dohme*, 2d Dist. Clark No. 2016-CA-42, 2017-Ohio-561, ¶ 14-20. His first assignment of error is overruled.

---

[2] At the sentencing hearing, Mr. Dawson told the court that he had rejected the offer for drug court because its program requirements were inconsistent with the travel requirements of his job.

**ASSIGNMENT OF ERROR TWO**

THE TRIAL COURT ERRED IN NOT ALLOWING THE APPELLANT TO ADMIT EXCULPATORY EVIDENCE THAT PLACED HIM IN ANOTHER LOCATION AT THE TIME OF THE ORIGINAL TRESPASS.

**ASSIGNMENT OF ERROR FIVE**

MR. DAWSON WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AND HIS RIGHT TO COMPULSORY PROCESS WHERE TRIAL COUNSEL FAILED TO SUBPOENA A PERSON TO AUTHENTICATE THE RECEIPT AND VIDEO FROM THE SHELL GAS STATION.

{¶16} In his second assignment of error, Mr. Dawson argues that the trial court erred when it excluded from evidence (1) a receipt from a purchase he made at the gas station next to Hyde Park Grille, and (2) the security footage from the gas station. In his fifth assignment of error, he argues that he received ineffective assistance of counsel because his counsel failed to subpoena a representative from the gas station to authenticate the receipt and the security footage. For the reasons outlined below, we reject both arguments.

{¶17} "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43. Likewise, an appellant will not prevail upon an ineffective assistance of counsel claim unless he demonstrates that his counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To demonstrate prejudice, he must prove that "there exists a reasonable probability that, were it not for counsel's [deficient performance], the result of the trial would have been different." *Bradley*, 42 Ohio St.3d 136 at paragraph three of the syllabus.

{¶18} There is no dispute that Hyde Park Grille is equipped with door alarms and sensors inside the restaurant that trigger additional alarms when they sense motion. The State set forth evidence that the front door alarm at the restaurant was triggered at 11:18 p.m. and that

additional motion sensors were triggered at 11:19 p.m. and 11:25 p.m. The police arrived at 11:31 p.m. Within several minutes, they discovered a shirtless Mr. Dawson walking around inside the kitchen area of the restaurant.

{¶19} During trial, defense counsel attempted to introduce a receipt from the gas station next to the restaurant, showing that Mr. Dawson had made a purchase there at 11:29 p.m. Additionally, counsel sought to introduce security footage from the gas station that depicted Mr. Dawson. The defense argued that both items were evidence that Mr. Dawson walked into the restaurant after someone else had already vandalized it.

{¶20} The State objected to the receipt and security footage on the basis of authentication and hearsay. It argued that the items should be excluded because no one could attest to the accuracy of their timestamps. Because neither side subpoenaed a representative from the gas station to testify, the trial court agreed to exclude the two items from trial. Nevertheless, the court allowed defense counsel to ask the witnesses several questions about the items.

{¶21} Defense counsel was able to elicit testimony that the police found a gas station receipt in Mr. Dawson's possession and his discarded sweatshirt at the gas station next to the restaurant. Additionally, defense counsel was able to cross-examine the detective who investigated the case about the information he learned from the gas station manager. The detective testified that he obtained security footage from the gas station, timestamped between 11:30 and 11:45 p.m. He confirmed that the footage depicted Mr. Dawson leaving the store at some point between 11:30 and 11:45 p.m., but that he did not recall the exact time. He further confirmed that he obtained a copy of the receipt from Mr. Dawson's purchase there. On redirect, he testified that it is common for the police to encounter inaccuracies in the timestamps

businesses use in their dealings. He stated that "[n]early in every case there is an issue with time, which can range from minutes to hours."

{¶22} Mr. Dawson argues that, had the court allowed him to introduce the actual receipt of his purchase from the gas station and the security footage that depicted him there, the jury would have concluded that he was not the individual who vandalized Hyde Park Grille. He asserts that the timestamps on both items would have shown that he was elsewhere when someone triggered the restaurant's alarms and that he merely wandered into the restaurant after the fact.

{¶23} Even if this Court assumes that the trial court erred by not allowing Mr. Dawson to introduce the receipt and security footage from the gas station, Mr. Dawson has not shown that he was prejudiced by that error. *See Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 43. Although the trial court excluded the items themselves, it allowed Mr. Dawson to elicit testimony about them. That testimony served as evidence that he went to the gas station and that its cameras spotted him there at a time that appeared to conflict with the times the alarms were triggered at Hyde Park Grille. The receipt and security footage, therefore, merely would have been cumulative evidence on that point. Moreover, the items themselves would not have detracted from the State's argument that their timestamps were inaccurate. It is entirely speculative whether a representative from the gas station, had he or she been subpoenaed, would have testified that the timestamps were, in fact, accurate. *See Buzek*, 2015-Ohio-4416, at ¶ 7, quoting *Zupancic*, 2013-Ohio-3072, at ¶ 4 (speculation will not establish prejudice for purposes of ineffective assistance of counsel). Moreover, this Court must consider the receipt and security footage in light of all the other evidence the State introduced at trial.

{¶24} The State presented evidence that, within minutes of their arrival, the police discovered a shirtless Mr. Dawson wandering around inside the kitchen area of Hyde Park Grille. When the police first spoke with Mr. Dawson, he told them that he had been in the restaurant for about 15 to 20 minutes. Additionally, when a detective spoke with Mr. Dawson the following morning, Mr. Dawson stated that he had used a planter to break the glass in the restaurant's front door and gain access. He also stated that he had pulled down a picture frame when he got inside. There was testimony that the police did not find anyone else inside the restaurant or any other signs of forced entry beyond the front door. There also was testimony that Mr. Dawson had been denied service at the restaurant's bar not long before closing because the staff recognized that he was intoxicated. While the evidence against him was circumstantial, he has not shown that the admission of his receipt and the security footage from the gas station would have changed the outcome here. *See Noling* at ¶ 43; *Strickland*, 466 U.S. at 687. As such, we reject his second and fifth assignments of error.

## ASSIGNMENT OF ERROR EIGHT

TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO REQUEST A CONTINUANCE.

{¶25} In his eighth assignment of error, Mr. Dawson argues that he received ineffective assistance of counsel because his counsel failed to request a continuance so as to review "several pieces of critical discovery" that the State only produced a few days before trial. We do not agree that Mr. Dawson has established ineffective assistance of counsel.

{¶26} As noted, an appellant will not prevail upon an ineffective assistance of counsel claim unless he demonstrates that his counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To demonstrate prejudice, he must prove that "there exists a

reasonable probability that, were it not for counsel's [deficient performance], the result of the trial would have been different." *Bradley*, 42 Ohio St.3d 136 at paragraph three of the syllabus.

{¶27} On the morning of trial, defense counsel informed the court that he had received two pieces of discovery from the State only a few days earlier: (1) a video recording from the body camera worn by one of the officers who responded to Hyde Park Grille, and (2) recordings of phone calls that Mr. Dawson made while in jail. Defense counsel did not request a continuance due to the late disclosure of the items, and Mr. Dawson argues that his failure to do so resulted in ineffective assistance of counsel. He argues that, had his counsel had more time to review the body camera recording, he could have used it in conjunction with the alarm log from the restaurant and the security footage from the gas station to detract from the State's version of the timeline of events. He also argues that it is unknown how many recorded conversations were captured on the recordings from the jail calls, so counsel needed time to review the recordings in their entirety.

{¶28} Even assuming that defense counsel ought to have requested a continuance, Mr. Dawson has not established that he suffered prejudice as a result of his counsel's decision not to do so. *See Strickland* at 687. *See also State v. Davis*, 9th Dist. Lorain No. 97CA006691, 1998 WL 887141, *6 (Dec. 16, 1998). The record reflects that the State agreed to play only a 4 minute, 27 second portion of the body camera recording and a brief portion of a single phone call that Mr. Dawson made while at the jail. Defense counsel advised the court that he had reviewed both the body camera recording and the jail call upon which the State intended to rely. The body camera footage itself only showed the officer's perspective from the point he arrived at Hyde Park Grille until briefly after the point that he and his fellow officers discovered Mr. Dawson. It is unclear how further study of that recording would have aided the defense in attacking the

timeline that the State offered at trial. Moreover, the jury heard evidence suggesting that the State's proposed timeline conflicted with security footage of Mr. Dawson at a nearby gas station. The jury nonetheless convicted Mr. Dawson on the basis of the circumstantial evidence that the State set forth. Mr. Dawson's suggestion that additional review of the body camera recording would have changed the outcome in this matter is pure speculation. *Buzek*, 2015-Ohio-4416, at ¶ 7, quoting *Zupancic*, 2013-Ohio-3072, at ¶ 4.

{¶29} Likewise, Mr. Dawson's argument regarding the jail call recordings is purely speculative. He acknowledges that it is unknown how many conversations the recordings contained. Further, the record only contains the one call that the State used at trial. This Court cannot speculate as to the value of an unknown number of recordings that are not a part of the record. Because Mr. Dawson has not shown that a request for a continuance would have changed the result in this matter, we reject his ineffective assistance of counsel argument. *See Bradley*, 42 Ohio St.3d 136 at paragraph three of the syllabus. His eighth assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO QUESTION
THE APPELLANT ABOUT PRIOR ALCOHOL RELATED INCIDENCES.

{¶30} In his third assignment of error, Mr. Dawson argues that the trial court erred when it allowed the State to question him in contravention of Evid.R. 609(A)(2). We disagree.

{¶31} "Evid.R. 609 governs the admission of prior convictions to impeach the accused." *State v. Sommerville*, 9th Dist. Summit No. 25094, 2010-Ohio-3576, ¶ 5. "Evid.R. 609(A)(2) states that prior felony convictions are admissible as impeachment against a defendant if the conviction resulted in * * * imprisonment of at least one year, and the trial court has determined that the probative value of the evidence outweighs any potential prejudice." *State v. Daniels*, 9th

Dist. Lorain No. 03CA008261, 2004-Ohio-828, ¶ 22. The rule gives trial courts "broad discretion to limit any questioning of a witness on cross-examination which asks more than the name of the crime, the time and place of conviction and the punishment imposed * * *." *State v. Amburgey*, 33 Ohio St.3d 115 (1987), syllabus.

{¶32} Mr. Dawson testified in his own defense. On direct examination, his counsel asked him about his prescription for a sleeping aid. The following exchange took place:

> [DEFENSE]: Is there anything on the [prescription] bottle * * * that relates to alcohol?
>
> [MR. DAWSON]: Absolutely, yes. It says, don't mix with alcohol, it causes adverse effects.
>
> [DEFENSE]: To your knowledge, did you ever experience something like that before?
>
> [MR. DAWSON]: Nothing like this at all; to this extent at all, no.

On cross-examination, the State sought to elicit testimony that Mr. Dawson had, in fact, previously experienced problems after consuming alcohol. The following exchange took place:

> [PROSECUTOR]: Now you indicated to [defense counsel] on direct examination that you never had issues like this in your past, correct?
>
> [MR. DAWSON]: Correct.
>
> [PROSECUTOR]: But isn't it true that this is not the first time you have been in trouble related to alcohol use?
>
> [MR. DAWSON]: No.
>
> [PROSECUTOR]: No, it is not true, you've never been in trouble before related to alcohol?
>
> [MR. DAWSON]: I have been in trouble with alcohol before. I'm sorry if I misspoke.

The prosecutor did not reference any specific prior conviction or ask Mr. Dawson whether his alcohol consumption had ever led to criminal charges. He simply asked whether Mr. Dawson had ever been "in trouble" due to alcohol.

{¶33} Mr. Dawson has not explained why Evid.R. 609(A)(2) applies here, given that the State did not seek to elicit the details of any of his past convictions. Even assuming the rule has some application here, however, the record reflects that Mr. Dawson did not object to the State's line of questioning. He, therefore, has forfeited this issue for appellate review. *See State v. McNeil*, 9th Dist. Summit No. 27720, 2016-Ohio-4669, ¶ 20. "Although a party who forfeits an argument still may argue plain error on appeal 'this Court "generally will not undertake a plain-error analysis if [the appellant] fails to do so."'" *State v. Blankenship*, 9th Dist. Medina Nos. 14CA0097-M & 14CA0098-M, 2016-Ohio-5458, ¶ 7, quoting *State v. Wallace*, 9th Dist. Lorain Nos. 14CA010609 & 14CA010610, 2015-Ohio-4222, ¶ 20, quoting *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 15. Because Mr. Dawson has not argued plain error on appeal, we decline to construct an argument on his behalf. His third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

THE GOVERNMENT COMMITTED MISCONDUCT DURING CLOSING WHEN IT IMPERMISSIBLY REFERENCED EVIDENCE OUTSIDE THE RECORD AND OFFERED ITS OPINION ON THE EVIDENCE.

{¶34} In his fourth assignment of error, Mr. Dawson argues that prosecutorial misconduct deprived him of a fair trial. For the reasons that follow, we reject his argument.

{¶35} During his closing argument, defense counsel argued that Mr. Dawson was inside a nearby gas station at the time officers first arrived at Hyde Park Grille. He offered, based on testimony about the gas station's security footage, that Mr. Dawson may have walked into the

restaurant after it has already been vandalized. The prosecutor then responded to that argument on rebuttal. The prosecutor described the security footage as a "red herring" and referenced the testimony of the detective who stated that the timestamps on such items are usually inaccurate. Mr. Dawson argues that the prosecutor's remarks were improper because they bolstered the detective's credibility and relied on facts not in evidence (i.e., the security footage).

{¶36} The record reflects that Mr. Dawson failed to object when the prosecutor made the foregoing argument. "[W]hen a defendant fails to object to alleged prosecutorial misconduct, the defendant forfeits all argument except that of plain error." *State v. Warrington*, 9th Dist. Medina No. 14CA0080-M, 2016-Ohio-244, ¶ 13. Mr. Dawson, however, has not argued plain error on appeal. Because Mr. Dawson forfeited his objections to prosecutorial misconduct by not objecting and has not argued plain error on appeal, this Court declines to address the merits of his argument. *See State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 26. His fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR SIX**

> MR. DAWSON'S RIGHT TO BE PRESENT AND TO BE REPRESENTED BY COUNSEL WERE VIOLATED WHEN THE TRIAL COURT DID NOT PROVIDE THE APPELLANT AND HIS COUNSEL AN OPPORTUNITY TO BE PRESENT WHEN ADDRESSING QUESTIONS FROM THE JURY.

{¶37} In his sixth assignment of error, Mr. Dawson argues that the trial court erred when it denied both him and his counsel the opportunity to be present when addressing multiple questions from the jury. For the reasons that follow, we reject his argument.

{¶38} "A criminal defendant has a fundamental right to be present at all critical stages of his trial." *State v. Hach*, 9th Dist. Summit No. 27409, 2014-Ohio-5113, ¶ 6. *See also* Crim.R. 43(A)(1) (defendant's physical presence generally required "at every stage of the criminal proceeding and trial").

Before a defendant may prevail upon the argument that he was denied due process as a result of his absence, however, (1) "'[t]he record must affirmatively indicate the absence of [the] defendant or his counsel during a particular stage of the trial,'" * * * and (2) the defendant must show that the absence prejudiced his defense.

(Alterations sic.) *State v. Davison*, 9th Dist. Lorain No. 10CA009803, 2011-Ohio-1528, ¶ 7, quoting *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 105, quoting *State v. Clark*, 38 Ohio St.3d 252, 258 (1988).

{¶39} Mr. Dawson acknowledges that the record is silent with regard to whether he and his counsel were present when the trial court received and responded to questions from the jury. He essentially asks this Court to infer from that silence that he and his counsel were not present. This Court, however, "cannot presume error from a silent record." *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 47, quoting *State v. Batton*, 9th Dist. Lorain No. 96CA006505, 1997 WL 60661, *5 (Sept. 17, 1997). When an appellant's argument necessarily requires reference to evidence outside the record, "it is more appropriate for a petition for post-conviction relief." *State v. Porter*, 9th Dist. Medina No. 12CA0061-M, 2013-Ohio-3969, ¶ 38. Because the record does not "affirmatively indicate the absence of [Mr. Dawson] or his counsel" at a critical stage of trial, Mr. Dawson cannot prevail on his argument that he was denied his right to be present. *Davison* at ¶ 7, quoting *Hale* at ¶ 105, quoting *Clark* at 258. His sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR SEVEN

THE TRIAL COURT LACKED THE AUTHORITY [TO] SENTENCE MR. DAWSON BECAUSE THE SENTENCING JUDGE WAS NOT PROPERLY ASSIGNED TO THE CASE.

{¶40} In his seventh assignment of error, Mr. Dawson argues that the judge who sentenced him lacked jurisdiction to issue his sentence because she was not assigned to his case

in accordance with either the Rules of Superintendence or Local Rules of the Summit County Court of Common Pleas.

**{¶41}** Both the Ohio Constitution and the Rules of Superintendence authorize the Chief Justice of the Ohio Supreme Court to appoint a retired judge to a county court of common pleas on a temporary basis. *See* Ohio Constitution, Article IV, Section 6(C); Sup.R. 17(B)(4). *See also State v. Sanders*, 9th Dist. Summit No. 26396, 2013-Ohio-2672, ¶ 6. On August 9, 2016, Chief Justice O'Connor issued a Certificate of Assignment in this matter, temporarily assigning the trial judge at issue to preside "in the Summit County Court of Common Pleas, General Division for the period of July 18, 2016 through July 20, 2016 and to conclude any proceedings in which she participated that are pending at the end of that period." Mr. Dawson's sentencing hearing took place on July 20, 2016. Although the Certificate of Assignment was not filed until after that date, Mr. Dawson has not set forth any case law standing for the proposition that Certificates of Assignment cannot be made retroactive. *See* App.R. 16(A)(7). Because the judge who issued Mr. Dawson's sentence was sitting by assignment, she did not lack jurisdiction over this matter. Mr. Dawson's seventh assignment of error is overruled.

III.

**{¶42}** Mr. Dawson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

HENRY HILLOW and WALTER H. EDWARDS, JR., Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.