[Cite as *State v. Quinn*, 2019-Ohio-3980.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 18CA0022-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRANDON QUINN | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 17 CR 0315 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2019

PER CURIAM.

{¶1} Appellant, Brandon Quinn, appeals from his convictions for gross sexual imposition ("GSI") in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} According to the victim ("S.L."), she was getting dressed for school one morning in 2012 when she noticed her mother's boyfriend's cell phone propped up against her bed, facing the area of her bedroom by a mirror where she normally gets dressed. She picked the phone up and realized it was actively recording a video. She took the phone to her mother, who was still in bed at the time, and told her to look at it. Mr. Quinn immediately grabbed the phone and began calling S.L. a liar. S.L. rushed off to school, where she told a friend and two others about the incident. School officials called the police, and Mr. Quinn was charged with voyeurism. S.L.'s mother did not believe her daughter's story, and S.L. was soon forced to move out of their

home and live at her aunt's house for the remainder of the school year. S.L. eventually moved to Michigan to live with her father and his girlfriend.

{¶3} At some point in 2012 or 2013, she revealed to her boyfriend ("C.R."), her father, and her father's girlfriend that Mr. Quinn had been molesting her for years, but no further action was taken. When her father was driving her back to Ohio for Mr. Quinn's voyeurism trial, S.L. spoke to her mother on the phone. S.L. had a panic attack, was afraid, and did not want to betray her mother, so she decided not to attend the trial, and her father drove her back home. After S.L. failed to appear at Mr. Quinn's trial, the voyeurism charge was dismissed.

{¶4} S.L. eventually moved back to Ohio in 2015, and she decided to finally tell the prosecutor and police that Mr. Quinn had been molesting her for years. She claimed Mr. Quinn would wake her up for school almost every day by rubbing her back and touching her breasts, buttocks, and vagina. During one particular incident, she was lying on her stomach in bed when Mr. Quinn crawled into bed with her, rubbed his penis on her buttocks, and ejaculated onto her back.

{¶5} Mr. Quinn was charged with two counts of felony-three GSI, which allegedly occurred in 2007 when S.L. was less than 13 years old. He was also charged with nine counts of felony-four GSI, which allegedly occurred from 2008 to 2012 when S.L.'s ability to consent was substantially impaired because she was asleep. After a jury trial, Mr. Quinn was convicted of all eleven counts of GSI. The trial court sentenced him to an aggregate total of four years in prison and classified him as a Tier II sex offender.

{¶6} Mr. Quinn now appeals from his convictions and raises four assignments of error for this Court's review.

{¶7} For ease of analysis, we will reorganize and consolidate certain assignments of error.

## II.

### ASSIGNMENT OF ERROR FOUR

THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT AND THE SUFFICIENCY OF THE EVIDENCE

{¶8} In his fourth assignment of error, Mr. Quinn argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Although sufficiency and manifest weight are two separate, legally distinct arguments and should be argued separately, Mr. Quinn has chosen to argue them together in his brief, and we will therefore address them together. *See, e.g., State v. Gilbert*, 9th Dist. Lorain No. 17CA011209, 2018-Ohio-1883, ¶ 5; *State v. Dean*, 9th Dist. Lorain No. 18CA011290, 2019-Ohio-1391, ¶ 5.

{¶9} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶10} Mr. Quinn was convicted in this case of two counts of felony-three gross sexual imposition, under R.C. 2907.05(A)(4), which provides: "No person shall have sexual contact with another, not the spouse of the offender [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." Mr. Quinn was also convicted of nine counts of felony-four gross sexual imposition, under R.C. 2907.05(A)(5), which provides: "No person shall have sexual contact with another, not the spouse of the offender [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition * * *."

{¶11} "Sexual contact" includes "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "A person acts purposely when it is the person's specific intention to cause a certain result * * *." R.C. 2901.22(A). This Court has consistently held that a trier of fact may infer a purpose of sexual arousal or gratification from the type, nature, and circumstances of the contact, along with the personality of the defendant. *E.g.*, *State v. Pistawka*, 9th Dist. Summit No. 27828, 2016-Ohio-1523, ¶ 16. Furthermore, sleep is considered a "mental or physical condition" sufficient to substantially impair a victim's ability to resist unwelcomed sexual contact within the meaning of R.C. 2907.05(A)(5). *State v. Porter*, 9th Dist. Medina No. 12CA0061-M, 2013-Ohio-3969, ¶ 19.

{¶12}  Mr. Quinn first argues that insufficient evidence was presented at trial to establish that S.L.'s ability to resist or consent was substantially impaired due to being asleep because she only testified that she pretended to be asleep.

{¶13}  Our review of the record reveals that S.L. testified she would normally sleep on her stomach, wearing only her underwear, shorts, and a t-shirt in bed.  According to S.L., Mr. Quinn would "come into [her] room, keep the lights off, close the door, sit next to [her] on the bed, and rub [her] back."  She explicitly testified that she would be asleep "sometimes" and would not hear him come into the room.  Mr. Quinn would rub her lower back under her clothes and "would rub [her] butt and the outside of [her] vagina, the side of [her] breast."  S.L. would pretend to be asleep when he rubbed the sides of her breasts, but would sometimes "jolt" her body and say, "Go away.  Get out."  She testified that Mr. Quinn would just tell her to relax.  He would remove her underwear and "would spread [her] bottom with his hands and [her] vagina with * * * his thumbs on the side * * *."  He would also touch the side of her breasts under her shirt, and she would "put [her] arms down very tight to try and restrict him."  Sometimes he would stop, but sometimes he would continue touching her.  She believed that the touching was not accidental, but that Mr. Quinn was "feeling it, feeling [her], enjoying it."  These almost daily incidents would last for fifteen-to-twenty minutes before Mr. Quinn would finally leave her bedroom.  She testified that, during one particular instance when she was sixteen or seventeen, she was sleeping on her stomach and Mr. Quinn "crawled up" behind her, crouched over her with his underwear still on, and began "rubbing his penis against [her] butt."  He eventually "left semen on [her] butt."  Thus, S.L. indeed provided graphic details of how the molestation would continue once she woke up, and she admitted that she sometimes still pretended to remain asleep or tried to "restrict" Mr. Quinn's touches during the incidents.  Her detailed account of Mr.

Quinn's actions and her own reactions throughout the sexual assaults, however, does not contradict or detract from her testimony that she would "sometimes" still be asleep in her bed, unaware that Mr. Quinn had even entered her room, when he began touching her inappropriately.

{¶14} Mr. Quinn also argues that even if S.L. was "sometimes" asleep, no reasonable trier of fact could determine that that element was established for every count of felony-four GSI. We find no merit in this argument. The State presented evidence that the sexual assaults occurred almost daily between January 1, 2008, and June 30, 2012. Instead of charging Mr. Quinn with hundreds of felonies, the State chose to charge him with nine felony-four GSI's, each of which included a different six-month time span. Thus, the State was not required to prove that each and every sexual assault during those four-and-a-half years occurred while S.L. was asleep, only that at least one GSI every six months occurred while she was asleep.

{¶15} After a review of the record, this Court concludes that the State presented sufficient evidence, if believed, to establish that Mr. Quinn committed at least one GSI every six months between January 1, 2008, and June 30, 2012, while S.L. was asleep. Based on S.L.'s testimony, a jury could have reasonably determined the State proved the element of a "mental or physical condition," i.e., sleep, for each of the nine counts of felony-four GSI beyond a reasonable doubt.

{¶16} When a conviction is challenged as being against the manifest weight of the evidence, this Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶17} In arguing that his convictions were against the manifest weight of the evidence, Mr. Quinn contends that the State relied on "purely circumstantial evidence presented through * * * testimony" without any physical or otherwise corroborating evidence. This argument is without merit.

{¶18} It is axiomatic that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus. Nevertheless, the State presented a wealth of direct evidence at trial, including the victim's testimony. "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. The jury in this case chose to believe S.L.'s allegations that Mr. Quinn had repeatedly molested her in her bedroom over the span of many years and found that the State had proven eleven counts of GSI beyond a reasonable doubt. Physical evidence or evidence corroborating the victim's testimony

is not required to support a conviction for GSI. *State v. Thomas*, 9th Dist. Wayne No. 10CA0003, 2010-Ohio-6373, ¶ 12. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶19} Mr. Quinn further claims that the State's evidence was "suspect" because S.L. did not come forward with her molestation allegations until 2016, i.e., nine years after the sexual abuse allegedly started. He questions why she did not reveal her allegations sooner, either to the police or to her counselors, and suggests that discussing the cell phone video with police back in 2012 would have been the "perfect opportunity" to disclose the sexual abuse. S.L. and C.R. both testified that S.L. first broke down and told C.R., S.L.'s father, and her father's girlfriend about the molestation sometime in either 2012 or 2013. S.L. explained that she never went to the police with her sexual abuse allegations for many years for a variety of reasons, including shame and embarrassment. Mr. Quinn directs us to no law which required S.L. to report her sexual abuse to the authorities any sooner than she did in this case, and we accordingly find no merit in this argument. *See* App.R. 16(A)(7).

{¶20} In reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the jury, in resolving any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Mr. Quinn has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶21} Mr. Quinn's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN ALLOWING A VIDEO TO BE PLAYED DURING TRIAL IN (SIC) THAT THE STATE HAD NOT BEEN (SIC) TURNED OVER IN DISCOVERY. THE VIDEO VIOLATED OHIO RULE OF EVIDENCE 403(A), AS IT BORE NO PROBATIVE VALUE TO THE PROCEEDINGS, CAUSED CONFUSION AMONG THE JURY, AND WAS UNFAIRLY PREJUDICIAL TO THE DEFENDANT.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN ALLOWING THE VIDEO TO BE PLAYED IN THAT THE VIDEO WAS ADMITTED CONTRARY TO OHIO RULE OF EVIDENCE 404(B). IT WAS EVIDENCE OF ANOTHER ALLEGED CRIME OF DEFENDANT, WHICH HAD NO VALUE TO THE CRIMES DEFENDANT WAS CHARGED WITH COMMITTING.

{¶22} In his first and second assignments of error, Mr. Quinn argues that the trial court erred in playing the cell phone video of S.L. getting dressed in her bedroom and then admitting the video into evidence.

{¶23} At the outset, we are compelled to note that although Mr. Quinn assigns as error the prosecutor's failure to provide the cell phone video in discovery, he makes no actual argument in support of that claim. *See* App.R. 16(A)(7). He only mentions the State's failure to provide discovery briefly in the statement of facts portion of his merit brief, which does not satisfy his duty to present an argument with respect to each assignment of error under App.R. 16(A)(7). We decline to assume Mr. Quinn's duty on appeal and create an argument on his behalf as to discovery of the video. *See In re E.G.*, 9th Dist. Medina No. 16CA0075-M, 2017-Ohio-2584, ¶ 27 ("[I]t is not the duty of this Court to scour the record for evidence and construct an argument on an appellant's behalf."). Nevertheless, the same attorney represented Mr. Quinn in both his voyeurism and GSI cases, and the prosecutor stated at trial that the video had been previously provided to defense counsel in the voyeurism case. In objecting to the video, defense counsel stated, "This is not the version of this tape that I have previously seen." Thus, even if

Mr. Quinn had set forth an argument challenging the State's failure to provide discovery of the video, defense counsel essentially admitted to receiving a copy of the video in advance, previously viewing it, and specifically recalling its contents, and we would likewise determine that Mr. Quinn has not suffered any prejudice.

**{¶24}** On appeal, Mr. Quinn is only challenging the trial court's decision to allow the playing of the cell phone video and the admission of the video into evidence; he is not challenging any of the trial testimony related to the video. The decision to admit or exclude evidence lies within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, (1987). We therefore review a trial court's decision to admit other acts for an abuse of discretion. *State v. Higgins*, 9th Dist. Summit No. 27700, 2018-Ohio-476, ¶ 44. The term abuse of discretion indicates that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶25}** Mr. Quinn argues that the trial court erred in playing and admitting the cell phone video at trial in violation of Evid.R. 403(A) and 404(B). "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). *See also* R.C. 2945.59. As the Supreme Court of Ohio has stated,

> the real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error. And while courts may determine prejudice in a number of ways and use language that may differ, they focus on both the impact that the offending evidence had on the verdict and the strength of the remaining

evidence. Both the error's impact on the verdict and the weight of the remaining evidence must be considered on appellate review.

*State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 25.

{¶26} As noted above Mr. Quinn is only challenging the trial court's decision to allow the playing of the cell phone video and the admission of the video into evidence. On appeal, he has not challenged any of the trial testimony related to the video, which was undeniably extensive. S.L. testified about finding the cell phone in record mode in her room, about what she was doing immediately before finding the phone, and about the aftermath of finding the phone recording her. In fact, almost all of the witnesses testified in some way about the video. In addition, S.L. read from the statement she provided to police about finding the cell phone and that statement was admitted into evidence as a defense exhibit. Even without seeing the contents of the video, given the evidence before it, it seems difficult to fathom that the jury would have questioned or doubted that a video as described by the witnesses existed. Thus, even assuming without deciding that the video should not have been played for the jury or admitted at trial because it represented improper other acts evidence, this Court concludes, after considering the totality of the record, that any error in playing or admitting it was harmless. *See* Crim.R. 52(A) (stating "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded").

{¶27} Given the arguments made on appeal, even absent the playing or admittance of the video, the jury still would have heard the extensive testimony about the video and its contents. In light of that other evidence that was admitted and not challenged on appeal, we cannot conclude that Mr. Quinn was prejudiced by the playing and admission of the video. Further, after weighing the remaining evidence, this Court concludes there was evidence before the jury which established beyond a reasonable doubt Mr. Quinn's guilt. *See Morris* at ¶ 33.

**{¶28}** Accordingly, Mr. Quinn's first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO COMMIT MULTIPLE ACTS OF MISCONDUCT, THEREBY DEPRIVING DEFENDANT OF A FAIR TRIAL.

**{¶29}** In his third assignment of error, Mr. Quinn argues that he was deprived of a fair trial due to prosecutorial misconduct when the prosecutor made various statements: "1) discussing two different irrelevant alleged prior bad acts, 2) improperly bolstering the credibility of the complaining witness, 3) introducing facts not in evidence through questions, and 4) repeatedly referring to [S.L.'s] boyfriend ("C.R.") as "Brandon," thereby confusing him with [Mr.] Quinn." We disagree.

**{¶30}** "A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones." *State v. Smith*, 14 Ohio St.3d 13, 13 (1984). Prosecutors must avoid insinuations and assertions calculated to mislead, and they may not allude to matters not supported by admissible evidence. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990), citing *Smith* at 14. "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced." *State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 22. *See also State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140. Thus, "'a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial.'" *Id.*, quoting *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6. In other words, "[t]he defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him." *Id.* "A reviewing court is to consider the trial record as a whole, and is to ignore harmless errors 'including most

constitutional violations.'" *State v. Overholt*, 9th Dist. Medina No. 02CA0108-M, 2003-Ohio-3500, ¶ 46, quoting *Lott* at 166. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

**{¶31}** Mr. Quinn first alleges misconduct occurred when the prosecutor discussed "two different irrelevant alleged prior bad acts[.]" The first was the cell phone video recording of S.L. in her bedroom, which he claims was both irrelevant to the charged offenses and unfairly prejudicial. We have already addressed the cell phone incident above, determined that the playing of the video and its introduction into evidence was harmless, and likewise decline to engage in any further analysis of it.

**{¶32}** He next challenges the prosecutor's remarks during opening statements concerning Mr. Quinn's prior, alleged rape of S.L. during an incident in Hocking Hills as highly prejudicial. It is axiomatic that remarks made by counsel in opening statements are not evidence. *State v. Carr*, 9th Dist. Summit No. 26661, 2014-Ohio-806, ¶ 16; *State v. Frazier*, 73 Ohio St.3d 323, 338 (1995). "The purpose of opening statements is to inform the jury of the nature of the case and to outline the facts that each party will attempt to prove." *State v. Overholt*, 9th Dist. Medina No. 2905-M, 1999 WL 635717, *8 (Aug. 18, 1999), citing *Maggio v. Cleveland*, 151 Ohio St. 136 (1949), paragraph one of the syllabus. "During opening statements, counsel is accorded latitude and allowed 'fair comment' on the facts to be presented at trial." *Diar* at ¶ 145. Generally, a statement made by counsel of the evidence that he expects to introduce is not reversible error unless it appears that counsel made the statement in bad faith, even if it turned out that such evidence was incompetent. *State v. Riffle*, 9th Dist. Medina No. 09CA0056-M, 2010-Ohio-2812, ¶ 10.

{¶33} Mr. Quinn objected to the following remarks during the prosecutor's opening statement:

> [S.L.] will tell you, I believe, of two other incidents, one that happened outside of this jurisdiction down in Hocking Hills when they were at a family vacation.
>
> [S.L.] got particularly badly sunburned, and everybody else went on a hike - -
>
> * * *
>
> Family members went on a hike. She stays back in bed and she's badly sunburned – this is during the same period of time, there's even a picture that exists from that vacation – and that Mr. Quinn stayed back, unbeknownst to her, got in bed with her, again as she was resting and sleeping, and actually, in that incident, inserted his fingers into her vagina.

{¶34} Mr. Quinn argues that these comments "unfairly aroused a feeling of antipathy against [him] in the jury[,]" and although testimony regarding the incident was later deemed inadmissible by the trial court, "[t]he bell could not be 'un-rung' * * *." He further speculates that the prosecutor made these remarks in bad faith by claiming "the prosecutor had every reason to know that evidence regarding this incident would not be admissible[,]" yet he offers no explanation or support for this conclusory statement. Although the trial court did, in fact, later determine that any evidence of the Hocking Hills incident was inadmissible, this eventuality was not made apparent until during S.L.'s testimony, well after opening statements had concluded. *See Riffle* at ¶ 10. We therefore conclude that the prosecutor's reference to S.L.'s expected testimony regarding the Hocking Hills incident was not made in bad faith and, consequently, cannot be the basis for a prosecutorial misconduct claim. *See id.*

{¶35} Mr. Quinn also objected at trial to the following statements made by the prosecutor during his cross-examination of S.L.'s mother ("B.Q."):

> (1) "Yes, because of the events that were going on. *She was being molested by your boyfriend, and then she gets recorded and mom doesn't believe her.* Are

those the events you're talking about that led to her leaving the house at seventeen years old?"

(2) "Well, maybe. Give me an example, because *apparently, it's not molesting your daughter*."

(Emphasis added.).

**{¶36}** "Cross-examination shall be permitted on all relevant matters and matters affecting credibility." Evid.R. 611(B). "[A] cross-examiner may ask a question if the examiner has a good-faith belief that a factual predicate for the question exists." *State v. Gillard*, 40 Ohio St.3d 226, 231 (1988). *See also State v. Feathers*, 9th Dist. Summit No. 19837, 2000 WL 1675038, *1 (Nov. 8, 2000). Here, prior to B.Q.'s testimony, S.L. testified in great detail as to the cell phone incident and also explained in graphic detail how she "was being molested when [she] was woken up for school." Because the prosecutor's statements while cross-examining B.Q. were supported by evidence already introduced at trial, we determine that they were neither improper nor prejudicial. *See State v. Cleveland*, 9th Dist. Lorain No. 96CA006357, 1997 WL 104653, *4 (Mar. 5, 1997).

**{¶37}** In the remainder of this assignment of error, Mr. Quinn challenges a multitude of other statements made by the prosecutor throughout the trial, and argues that the prosecutor committed misconduct by: (1) improperly bolstering S.L.'s credibility during direct examination; (2) presenting "facts" to the jury under the guise of questioning a witness; and (3) improperly confusing S.L.'s boyfriend ("C.R.") with Mr. Quinn during his opening statement. We need not address the merits of these arguments, however, because Mr. Quinn never objected to any of these other statements at trial and has, thus, forfeited all but plain error on appeal. *See State v. Dawson*, 9th Dist. Summit No. 28311, 2017-Ohio-2833, ¶ 36; *State v. Anderson*, 9th Dist. Wayne No. 14AP0054, 2016-Ohio-7814, ¶ 12. Mr. Quinn has not raised plain error on appeal,

and "[t]his Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it." *State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 9.

**{¶38}** Mr. Quinn's third assignment of error is overruled.

III.

**{¶39}** Mr. Quinn's assignments of error are all overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

TEODOSIO, P. J.
DISSENTING.

{¶40} Because I would conclude that the impermissible introduction of other acts evidence to wit: the cell phone video was not harmless error in this matter, and would consequently reverse and remand the cause for a new trial, I must respectfully dissent.

{¶41} "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68 (1975). The improper admission of other acts evidence necessitates reversal when there is a reasonable possibility that the evidence contributed to the accused's conviction. *State v. Tran*, 9th Dist. Summit No. 22910, 2006-Ohio-4463, ¶ 47, citing *State v. Treesh*, 90 Ohio St.3d 460, 483 (2001). Courts conduct a three-step analysis in determining whether to admit other acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20. In applying the three-step analysis outlined in *Williams* to the facts in this case, I would conclude that the highly prejudicial other acts video was improperly played and admitted at trial.

{¶42} I would further conclude that the trial court's error in permitting the video to be played and entered into evidence was not harmless. An error in improperly admitting other acts evidence may only be deemed harmless where there is *overwhelming* evidence of guilt. *See State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 191. "[I]n determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 33. While I agree with the majority that the State presented sufficient evidence to convict Mr. Quinn of all eleven counts of GSI, I would cautiously stop short of characterizing it as overwhelming evidence of guilt. Allegations of the repeated sexual abuse of a child are no doubt serious and disturbing, but the State's case in this matter turned predominantly on a determination of S.L.'s credibility, as her testimony was the only evidence presented that Mr. Quinn committed countless acts of GSI. In a case such as this one, where credibility is paramount, I would refrain from concluding that the erroneous admission of highly prejudicial other acts evidence is harmless. *See State v. Hart*, 8th Dist. Cuyahoga No. 105673, 2018-Ohio-3272, ¶ 42.

{¶43} A vast majority of the State's case in chief focused on the unrelated voyeurism/cell phone incident, to a point where the GSI charges became a secondary issue. The State did not file any notice of intent to introduce other acts evidence and offered no clear reason or exception at trial under Evid.R. 404(B) or R.C. 2945.59 why the video should be either played for the jury or admitted into evidence. The State conceded Mr. Quinn was facing no charges related to the cell phone incident. As such, it appears to me that the cell phone video was introduced for the very reason other acts evidence is generally impermissible: to improperly

show a propensity or inclination to commit crime. *See Curry* at 68. The inference that deeply permeated the entire trial was clear: if Mr. Quinn filmed S.L. in a state of undress, then he must have also molested her. The prosecutor, in fact, told the jury during closing arguments that S.L. considered the video as "proof" of her molestation and said all the jury had to do was "just watch it." The jury did, in fact, review the video again during its deliberations as the prosecutor had requested.

{¶44} A critical, yet overlooked, factor is that no limiting instruction was provided to the jury regarding the video either during the trial or at the close of all evidence. *See State v. Wheeler*, 9th Dist. Summit No. 27643, 2016-Ohio-15, ¶ 8 ("A limiting instruction serves to minimize the likelihood that evidence of other acts will result in undue prejudice."). The complete lack of a limiting instruction to help guide the jury's review of the video heightened the risk of prejudice, instead leaving the jury to its own devices to consider the video however it saw fit. *See State v. Hartman*, 8th Dist. Cuyahoga No. 105159, 2018-Ohio-2641, ¶ 43-44. The majority perceives the viewing and admission of the video as harmless in light of the remaining evidence presented. Contrarily, I am hesitant to presume that exposure to what is allegedly a step-father's voyeuristic video of his young step-daughter in a state of undress, without any guidance from the trial court, would have little to no prejudicial impact on a jury's decision as to whether that same man molested the young child beyond a reasonable doubt.

{¶45} Despite the tremendously disturbing nature of Mr. Quinn's alleged crimes in this matter, I cannot in good conscience ignore the highly prejudicial effect the playing of the cell phone video and its admission into evidence had on his trial and convictions. In the absence of overwhelming evidence of guilt, I cannot agree that it was harmless error to show the jury this unsettling and emotionally inflammatory video of other acts not at issue in Mr. Quinn's GSI trial.

The jurors were told the video was "proof" of S.L.'s molestation and were told by the prosecutor to "just watch it," which they did. In my opinion, a "substantial danger" existed that this video "tipped the scale toward conviction." *See State v. Patterson*, 5th Dist. Stark No. 2017CA00022, 2017-Ohio-8970, ¶ 38.

{¶46} While I certainly recognize and can appreciate the highly sensitive and troubling nature of the allegations in this case, the law nonetheless demands that Mr. Quinn be granted a new trial. *See Tran* at ¶ 47, citing *Treesh* at 483. "There is always a temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation." *State v. Gardner*, 135 Ohio St.3d 99, 2012-Ohio-5683, ¶ 24. I fear that the majority's decision today will be misconstrued and cited in the future as precedent by prosecutors and courts alike in unfortunate applications of "what Professor Irving Younger once called 'the guilty SOB theory of admissibility.' In other words, if you need the evidence to get a conviction-let it in." *State v. Miller*, 43 Ohio App.3d 44, 48 (9th Dist.1988) (Quillin, P. J., concurring).

{¶47} I respectfully dissent.


APPEARANCES:

THOMAS L. ERB, JR., Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.