**[Cite as *State v. McManaway*, 2022-Ohio-2086.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF WAYNE | )ss:<br>) | NINTH JUDICIAL DISTRICT |

| STATE OF OHIO | | C.A. No. 20AP0046 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| KAMERON MCMANAWAY | | WAYNE COUNTY MUNICIPAL COURT<br>COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No. 2020 CR-B 000719 |

## DECISION AND JOURNAL ENTRY

Dated: June 21, 2022

HENSAL, Judge.

**{¶1}** Kameron McManaway appeals her conviction from the Wayne County Municipal Court. This Court affirms.

I.

**{¶2}** Ms. McManaway was charged with two counts of endangering children and one count of domestic violence stemming from an incident that occurred on July 1, 2020. Ms. McManaway pleaded not guilty, and the matter proceeded to a jury trial. The following facts were adduced at trial.

**{¶3}** While the version of events differed between Ms. McManaway and the victim at trial, the following facts were not in dispute. On the date of the incident, Ms. McManaway and the victim had been dating for about four months. Ms. McManaway and the victim lived together in Ms. McManaway's house. They shared household duties, including cleaning, preparing meals, and taking care of Ms. McManaway's two young children.

{¶4}    On July 1, 2021, the victim drove Ms. McManaway to the hospital so she could visit her grandfather who had suffered a heart attack.  Due to Covid-related restrictions on hospital visitors, Ms. McManaway was unable to see her grandfather and eventually left the hospital.

{¶5}    After she left the hospital, Ms. McManaway met up with her former boyfriend at a park.  After spending time with her former boyfriend, Ms. McManaway went to her mother's house, where the victim was waiting for her.  The victim, Ms. McManaway, and her two children then got into the victim's car and the victim started driving.  Ms. McManaway was in the passenger's seat, and her children were in the backseat. What happened next varied between the victim and Ms. McManaway.

{¶6}    According to the victim, he asked to see McManaway's phone, which he had purchased for her.  Ms. McManaway gave the victim her phone, and he confirmed that Ms. McManaway had been in contact with her former boyfriend.  He then told her he was done with their relationship and asked her to pack his things and leave them outside her house so he could pick them up.  Ms. McManaway then punched him in his eye and bit his arm.  The victim could not recall, however, whether the punch or bite occurred first.  The victim testified that he missed two days of work as a result of the injury to his eye, and that the bite hurt for a day.  The State presented photographs of the victim's injuries, which showed a red, swollen right eye, and a bite mark on the victim's arm.

{¶7}    After punching and biting the victim, Ms. McManaway tried to pull the key out of the ignition while the victim was driving, so he grabbed her wrist.  While still driving, the victim called 911.  During the course of the call, the victim parked in a parking lot and waited for the police to arrive.  At that time, Ms. McManaway exited the car, retrieved her children from the backseat, and called her mom.

{¶8} According to Ms. McManaway, the victim accused her of having sex with her former boyfriend. After he looked through her phone, he started screaming at her, so she asked him to pull the car over so they could talk. When he refused, she opened the car door while they were at a stoplight and tried to exit the car. The victim then grabbed her by the pants and shirt and pulled her back into the car. She then tried to get her phone back from the victim, which he had put between his legs. When she went to grab the phone, the victim squeezed her wrist, so she bit him. The victim then continued screaming at her and started screaming at her children. She then smacked him across the face.

{¶9} On cross-examination, Ms. McManaway admitted that she never told the police at the scene that she tried to exit the car and that the victim pulled her back in. Additionally, she acknowledged that she apologized to the victim after the incident because she realized she should not have smacked him in response to him yelling at her.

{¶10} The jury found Ms. McManaway not guilty of endangering children, but guilty of domestic violence. She now appeals, raising four assignments of error for this Court's review.

II

ASSIGNMENT OF ERROR I

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT OF GUILTY.

{¶11} In her first assignment of error, Ms. McManaway argues that the State failed to present sufficient evidence to establish that she committed domestic violence because the State failed to prove that she and the victim "resid[ed]" together. For the reasons that follow, this Court disagrees.

{¶12} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this

review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶13} Section 2919.25(A) under which Ms. McManaway was convicted, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A "household member" includes "a person living as a spouse * * * of the offender[.]" R.C. 2919.25(F)(1)(a)(i) A "'[p]erson living as a spouse' means a person who * * * is cohabiting with the offender[.]" R.C. 2919.25(F)(2). As the Ohio Supreme Court has stated, "[t]he essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 79 Ohio St.3d 459 (1997), paragraph two of the syllabus. It continued that:

> [p]ossible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations.

*Id.* at 465. The Ohio Supreme Court later clarified that the sharing of familial or financial responsibilities is not required when there is evidence that the victim and the offender lived together. *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, ¶ 13. As this Court has stated, "[t]he burden of [production for] establishing cohabitation is not substantial." (Alteration sic.) *State v. Long*, 9th Dist. Summit No. 25249, 2011-Ohio-1050, ¶ 6, quoting *Dyke v. Price*, 2d Dist. Montgomery No. 18060, 2000 WL 1546555, *3 (Oct. 20, 2000). "[I]t is a person's determination

to share some measure of life's responsibilities with another that creates cohabitation." *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, ¶ 35.

{¶14} As previously noted, Ms. McManaway argues that the State failed to present sufficient evidence to establish that she committed domestic violence because the State failed to prove that she and the victim "resid[ed] together. She asserts that "reside" means "to live at a place on an ongoing basis[,]" and that there was no evidence that the victim was going to be living with her in the future.

{¶15} Despite Ms. McManaway's reliance on the term "reside[,]" this Court's focus is on the language and definitions set forth in Section 2919.25, as well as the case law interpreting that statute. Here, the victim testified that he had been in a relationship with Ms. McManaway for four months prior to the incident, and that they lived together at Ms. McManaway's house during that time. He testified that they both paid for groceries, cooked meals, and did chores around the house. He testified that he cared for Ms. McManaway's children when she was at work, which included preparing meals, feeding them, and changing diapers. He also testified that he and Ms. McManaway shared a bedroom, and that the majority of his personal belongings were at her house. Viewing this evidence in a light most favorable to the State, we conclude that the State presented sufficient evidence to establish that Ms. McManaway and the victim were "household member[s]" for purposes of Section 2919.25(A). Ms. McManaway's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} In her second assignment of error, Ms. McManaway argues that her conviction was against the manifest weight of the evidence. This Court disagrees.

{¶17} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶18} In support of her argument that her conviction was against the manifest weight of the evidence, Ms. McManaway essentially argues that she acted reasonably under the circumstances. She argues that she "didn't know what else to do" since the victim was preventing her from exiting the car, screaming at her and her children, and grabbing her wrist. Ms. McManaway's argument, however, relies on her version of the events, which the jury was not required to believe. *State v. Straughan*, 9th Dist. Summit No. 29549, 2021-Ohio-1054, ¶ 34, quoting *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20 ("[T]he jury is free to believe all, part, or none of the testimony of each witness."). While the victim did admit to grabbing Ms. McManaway's wrist, he told the police at the scene and the jury at trial that he did so because she was trying to turn off the car while it was in motion, which created a dangerous situation. Having reviewed the record, this Court cannot say that Ms. McManaway has established

that this is the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, Ms. McManaway's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO GIVE THE PROPER [] SELF DEFENSE INSTRUCTION FOR USE OF NON DEADLY FORCE IN PROTECTION OF OTHERS PURSUANT TO ORC 2901.05; [] SAID TRIAL MISCONDUCT CONSTITUTED PLAIN ERROR.

{¶19} In her third assignment of error, Ms. McManaway argues that the trial court committed plain error by not providing the jury with an instruction on defense of others. This Court disagrees.

{¶20} As McManaway acknowledges, her trial counsel did not object to the jury instructions at trial. As a result, she is limited to arguing plain error on appeal. Crim.R. 30(A); *State v. Oliver*, 9th Dist. Summit No. 29535, 2021-Ohio-4153, ¶ 60. Criminal Rule 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings." *State v. Berila*, 9th Dist. Medina No. 19CA0007-M, 2020-Ohio-3523, ¶ 43, quoting *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶21} As the Ohio Supreme Court has explained, "a trial court should limit its instructions to the jury to matters actually raised in the pleadings and in the evidence at trial." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 33. "If there is no

evidence to support an issue, then the trial court should not charge the jury on the issue." *Gibbons v. Shalodi*, 9th Dist. Lorain No. 19CA011586, 2021-Ohio-1910, ¶ 51, citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." (Alteration sic.) *Murphy* at 591, quoting *Feterle v. Huettner*, 28 Ohio St.2d 54 (1971), syllabus.

{¶22} The defense of others doctrine affords a person the privilege "to defend family members to the same extent he is entitled to protect himself." *State v. Skinner*, 9th Dist. Lorain No. 06CA009023, 2007-Ohio-5601, ¶ 20, citing *State v. Williford*, 49 Ohio St.3d 247, 250 (1990). Regarding self-defense, this Court has stated:

> "Self-defense requires that a defendant: (1) was not at fault in creating the situation giving rise to the affray; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) did not violate any duty to retreat or avoid the danger." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 12, citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). "All three of these elements must be present to establish self-defense." *Id.*

*State v. Preston*, 9th Dist. Summit No. 29730, 2021-Ohio-1052, ¶ 5, quoting *Warren* at ¶ 12.

{¶23} Initially, we note that Ms. McManaway has not directed this Court to any facts or testimony in the record in support of her assertion that the trial court committed plain error by not instructing the jury on defense of others. *See* App.R. 16(A)(7) (requiring the appellant's merit brief to include citations to parts of the record on which the appellant relies). At trial, Ms. McManaway testified that she bit the victim because he was squeezing her wrist, and that she smacked him because he was yelling at her and her children. She admitted that she "mess[ed] up[,]" and that she "shouldn't [have] smacked [the victim] in the face for yelling at [her]."

**{¶24}** While Ms. McManaway did testify that her children were scared when the victim was yelling and that she thought it would be safer if the victim pulled the car over, at no point did she testify that she bit or smacked the victim in defense of her children. Because there was no evidence to support that Ms. McManaway acted in defense of her children, we find no error in the trial court's failure to instruct the jury on defense of others. *See State v. Wells*, 9th Dist. Medina No. 18CA0026-M, 2019-Ohio-1276, ¶ 17, quoting *Williford* at 251 ("A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence."). Without error, Ms. McManaway cannot establish plain error. *See State v. Gibson*, 9th Dist. Summit No. 30078, 2022-Ohio-1653, ¶ 15. Accordingly, her third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**{¶25}** In her fourth assignment of error, Ms. McManaway asserts that her trial counsel provided ineffective assistance because he did not object to the jury instructions at trial and did not move for acquittal under Criminal Rule 29. For the reasons that follow, this Court disagrees.

**{¶26}** To prevail on a claim of ineffective assistance of counsel, Ms. McManaway must establish that: (1) her counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Ms. McManaway must show that there existed a reasonable probability that, but for her counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶27} Ms. McManaway's argument related to her counsel's failure to object to the jury instructions is premised on the lack of a defense-of-others instruction. As this Court has already concluded in our resolution of Ms. McManaway's third assignment of error, however, the trial court did not err by not instructing the jury on the defense of others. It, therefore, follows that Ms. McManaway cannot establish that she suffered prejudice by her counsel's failure to object to the jury instructions at trial.

{¶28} Regarding Ms. McManaway's trial counsel's failure to move for acquittal under Criminal Rule 29, her trial counsel's failure in that regard did not constitute a forfeiture of a sufficiency argument on appeal. *See State v. Basford*, 9th Dist. Medina No. 20CA0017-M, 2021-Ohio-161, ¶ 50. In resolving Ms. McManaway's first assignment of error, this Court concluded that she failed to establish that her conviction was not supported by sufficient evidence. Thus, "even if defense counsel had moved for a judgment of acquittal, [Ms. McManaway] has failed to demonstrate that there is a reasonable probability that the result of trial would have been different." *Id.*; *State v. Burnette*, 9th Dist. Wayne No. 20AP0036, 2022-Ohio-1103, ¶ 23. As a result, she cannot establish that her trial counsel provided ineffective assistance by not moving for acquittal at trial.

**{¶29}** In light of the foregoing, Ms. McManaway's fourth assignment of error is overruled.

### III

**{¶30}** Ms. McManaway's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and FREELAND OLIVERIO, Assistant Prosecuting Attorney, for Appellee.