[Cite as *State v. Graham*, 2023-Ohio-1784.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 21AP0014 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BREANNA GRAHAM | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2020 CR-B 000764 |

DECISION AND JOURNAL ENTRY

Dated: May 30, 2023

FLAGG LANZINGER, Judge.

**{¶1}** Breanna Graham appeals her convictions for assault and disorderly conduct from the Wayne County Municipal Court. For the following reasons, this Court affirms.

I.

**{¶2}** Ms. Graham was charged with one count of assault in violation of R.C. 2903.13(A), and one count of disorderly conduct in violation of R.C. 2917.11(A)(1). The charges stemmed from an altercation Ms. Graham had with the victim in this matter on July 6, 2020. Ms. Graham and the victim are half-sisters who share the same biological mother. According to the testimony adduced at trial, Ms. Graham's mother gave Ms. Graham up for adoption when Ms. Graham was young. Ms. Graham's mother, however, maintained custody of the victim. This caused a strain in the relationship Ms. Graham had with the victim and with her biological mother. Ms. Graham and the victim reconnected as adults and began to have a cordial relationship. At the time of the underlying incident, the victim worked part-time at the same restaurant that Ms. Graham managed.

In addition to working together, the two half-sisters lived one house away from each other on the same street.

{¶3}    In the days prior to the incident, the victim's father passed away. While the victim was sorting through some of her father's belongings, she found baby pictures of Ms. Graham. The victim dropped off the baby pictures at Ms. Graham's house on the afternoon of the underlying incident. Ms. Graham was not home at the time, so the victim gave the pictures to Ms. Graham's husband. Ms. Graham called the victim later that evening and invited her over to talk. According to the victim, she and Ms. Graham had been cordial prior to the incident. The victim expected the conversation between herself and Ms. Graham to be a positive, therapeutic conversation regarding her father's recent death. According to Ms. Graham, she and the victim were not on good terms at the time of the incident because there had been a familial dispute regarding their grandmother's medical records.

{¶4}    According to the victim's testimony at trial, when she arrived at Ms. Graham's house, Ms. Graham and their mutual cousin, J.H., were sitting on the back patio drinking alcohol. The victim and J.H. did not get along. When the victim stepped through the sliding glass door that led from the house onto the back patio, Ms. Graham blocked the three steps that led from the patio into the backyard. J.H. then blocked the sliding glass door. The victim became anxious and felt that she was being setup. The victim told Ms. Graham and J.H. that she wanted to leave, but Ms. Graham told the victim that she just wanted to talk. According to the victim, Ms. Graham took her cell phone from her and proceeded to berate and insult her and her mother for over an hour.

{¶5}    The victim testified that Ms. Graham eventually gave her back her cell phone. The victim also testified that Ms. Graham agreed to escort her off the back patio and walked her to the steps that led from the patio into the backyard. When the victim got to the last step, Ms. Graham

pulled the victim down by her hair, held her down, and punched her with a closed fist while J.H. kicked her. The victim testified that she did not fight back, and that she called 911 as soon as she was able to get up and get into the neighbor's yard.

{¶6} Deputy Trent Hankins with the Wayne County Sheriff's Office responded to the scene. Deputy Hankins testified that the victim appeared distraught when he arrived. Deputy Hankins also testified that the victim had signs of physical injuries, including a red cheek and a scratch behind her ear. The trial court admitted photographs depicting these injuries into evidence. Deputy Hankins also testified that the victim had dirt on her hands, which was consistent with the victim's statement that Ms. Graham had pulled her to the ground. Deputy Hankins further testified that he interviewed Ms. Graham on the night of the incident, and that Ms. Graham initially denied any altercation. Ms. Graham later admitted to Deputy Hankins that she had a verbal argument with the victim, but she denied any physical altercation. Consistent with the victim's testimony that Ms. Graham had been drinking alcohol, Deputy Hankins testified that he smelled alcohol on Ms. Graham's person.

{¶7} At the close of the State's case-in-chief outside the presence of the jury, Ms. Graham's defense counsel noted that the victim "blurted out that [Ms. Graham] had two convictions for OVI" during his cross-examination of the victim. Ms. Graham's defense counsel stated that he "didn't bring it up at the time because we were just trying to get through some of the testimony presented," but that he believed it was improper and grounds for a mistrial. The trial court denied Ms. Graham's defense counsel's motion for a mistrial but offered to provide a curative instruction to the jury. The trial court explained that a curative instruction might draw more attention to the issue but stated that it would leave it up to defense counsel to decide whether he

wanted the trial court to provide one to the jury. Ms. Graham's defense counsel responded: "Understood."

{¶8}   Ms. Graham then testified on her own behalf. According to her, she was resentful toward her mother for putting her up for adoption, and she had no relationship with the victim until recent years. Ms. Graham testified that the victim showed up unannounced to drop off baby pictures, which upset her. Ms. Graham testified that she invited the victim over later that evening to discuss the victim's unannounced visit. Ms. Graham also testified that she wanted to talk with the victim about a familial dispute concerning their grandmother's medical records. Ms. Graham admitted that she had been drinking alcohol the night of the incident but denied being drunk.

{¶9}   Ms. Graham testified that she and the victim had a verbal argument. Ms. Graham testified that the victim never asked to leave, and that she never blocked the victim from leaving. Ms. Graham also testified that she never took the victim's cell phone. Ms. Graham testified that she eventually told the victim that it was time for her to leave, and that she escorted the victim to the steps that led from the patio into the backyard. Ms. Graham denied any physical altercation with the victim.

{¶10}  The defense rested after Ms. Graham's testimony. There is no indication that Ms. Graham's defense counsel requested a curative instruction regarding the victim's reference to Ms. Graham's prior OVI convictions. Ms. Graham was then found guilty of assault and disorderly conduct. She now appeals, raising two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT DENIED GRAHAM'S MOTION FOR MISTRIAL.

**{¶11}** In her first assignment of error, Ms. Graham argues that the trial court erred by denying her motion for a mistrial. For the following reasons, this Court disagrees.

**{¶12}** A mistrial must be declared "only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463 (1973) and *Arizona v. Washington*, 434 U.S. 497, 505-506 (1978). Because "the trial judge is in the best position to determine whether the situation in [the] courtroom warrants the declaration of a mistrial[,]" the decision is one committed to the discretion of the trial court. *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). "This Court reviews a trial court's decision to deny a mistrial for an abuse of discretion." *State v. Rones*, 9th Dist. Summit No. 30073, 2023-Ohio-60, ¶ 16. "In analyzing whether a defendant was deprived of a fair trial, an appellate court must determine whether, absent the improper remarks, the jury would have found the appellant guilty beyond a reasonable doubt." *Columbus v. Aleshire*, 10th Dist. Franklin No. 09AP-104, 2010-Ohio-2773, ¶ 42, citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984).

**{¶13}** During his cross-examination of the victim, Ms. Graham's defense counsel asked the victim about her statement to Deputy Hankins that Ms. Graham was drunk at the time of the incident. The victim responded: "[Ms. Graham is] always drunk. She's an alcoholic. She's had numerous DUI's." Ms. Graham's defense counsel immediately moved on to his next question without addressing the victim's testimony regarding Ms. Graham's prior OVI convictions.

**{¶14}** In her merit brief, Ms. Graham asserts that the victim's reference to her prior OVI convictions was highly prejudicial because it indicated that she is a reckless criminal. Ms. Graham also asserts that the jury might have inferred that she was intoxicated at the time of the incident and, therefore, might have further inferred that she became violent because she was intoxicated. For the following reasons, this Court concludes that Ms. Graham's arguments lack merit.

{¶15} Initially, this Court notes that the victim specifically testified that Ms. Graham was drinking, slurring her words, and "probably drunk" at the time of the incident. The jury was free to believe that testimony. *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28 ("[T]he jury is free to believe or disbelieve any, or all, of the testimony from each witness."). Additionally, Deputy Hankins testified that he smelled alcohol on Ms. Graham's person. Thus, Ms. Graham's argument that the jury might have inferred that she was intoxicated at the time of the incident based upon the victim's reference to her prior OVI convictions is unavailing.

{¶16} More importantly, however, Ms. Graham's argument ignores the fact that her own defense counsel elicited the testimony about her prior OVI convictions during his cross-examination of the victim. Ms. Graham's argument also ignores the fact that her defense counsel never moved to strike that testimony, and that her defense counsel never requested a curative instruction despite the trial court offering to provide one to the jury. This Court has previously held that if a litigant first elicits certain testimony on cross-examination, then any error in the admission of that evidence is invited error. *State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 37, citing *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 75; *see State v. Scott*, 6th Dist. Sandusky No. S-19-030, 2020-Ohio-4854, ¶ 27, citing *State v. Grether*, 9th Dist. Summit No. 28977, 2019-Ohio-4243, ¶ 27 ("The doctrine of invited error prevents defendant from asserting an error arising from the disclosure of a prior conviction as a result of his cross-examination of the witness."). Under the doctrine of invited error, a litigant cannot "take advantage of an error which [she herself] invited or induced." *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 50, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. Here, Ms. Graham cannot use that evidence as grounds for a mistrial because her defense counsel: (1) elicited the testimony regarding

Ms. Graham's prior OVI convictions during his cross-examination of the victim; (2) did not move to strike that testimony; and (3) did not request a curative instructive despite the trial court offering to provide one. *State v. W.J.*, 10th Dist. Franklin No. 14AP-457, 2015-Ohio-2353, ¶ 51 ("When defense counsel elicits testimony regarding a defendant's prior criminal history, the defendant cannot then use the evidence he elicited as grounds for a mistrial.").

{¶17} Even if Ms. Graham could take advantage of any error that her defense counsel invited or induced, Ms. Graham has not argued, much less established, that the jury would not have found her guilty beyond a reasonable doubt absent the improper remarks. The State presented evidence indicating that Ms. Graham caused physical harm to the victim when she pulled the victim down by her hair and punched her in the face. This included photographs of a red mark on the victim's cheek, as well as a scratch on the victim's neck. Additionally, the victim's reference to Ms. Graham's prior OVI convictions was "fleeting," and defense counsel immediately moved on to his next question. *See State v. Gary*, 9th Dist. Wayne No. 12CA0014, 2012-Ohio-5813, ¶ 31 (holding that the trial court did not abuse its discretion when it denied the defendant's motion for a mistrial based upon a "fleeting" reference to a prior conviction). This Court concludes that, absent the "fleeting" reference to Ms. Graham's prior OVI convictions, the jury would have still found Ms. Graham guilty beyond a reasonable doubt. *See Aleshire*, 2010-Ohio-2773, at ¶ 42, citing *Maurer*, 15 Ohio St.3d at 267. Thus, even if Ms. Graham could take advantage of any error that her defense counsel invited or induced, she has not established reversible error. Accordingly, Ms. Graham's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

GRAHAM'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE.

{¶18} In her second assignment, Ms. Graham argues that her "conviction" was against the manifest weight of the evidence. It is unclear which conviction (i.e., assault or disorderly conduct) Ms. Graham is referring to in the caption of her assignment of error. In the body of her argument, however, Ms. Graham quotes the language from R.C. 2903.13(A), which governs assault. This Court will limit its analysis accordingly. *See* App.R. 16(A)(7).

{¶19} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶20} Ms. Graham argues that her assault conviction was against the manifest weight of the evidence for several reasons. First, Ms. Graham argues that the State and the defense presented conflicting evidence about the status of the relationship between Ms. Graham and the victim at the time of the incident (i.e., whether they were on good terms). Second, Ms. Graham argues that the physical evidence undermined the victim's version of the events. In support of this argument, Ms. Graham asserts that the victim's clothes were not dirty and the grass in the backyard was not flattened. According to Ms. Graham, this evidence undermined the victim's claim that Ms. Graham

pulled her to the ground. Ms. Graham also supports her argument by asserting that she (Ms. Graham) did not have red marks on her hands that would indicate that she punched the victim. Third, Ms. Graham argues that the victim was not credible. In support of this argument, Ms. Graham asserts that the victim claimed to have a shoulder injury, yet the victim was able to hold a clipboard while writing her statement to the police. Additionally, Ms. Graham asserts that the medical records did not reflect a shoulder injury. Fourth, Ms. Graham asserts that the victim never screamed for help, and there were no other witnesses to the alleged assault. Fifth, Ms. Graham argues that despite claiming that Ms. Graham prevented her from leaving the back patio, the victim could have left by jumping over the patio railing.

{¶21} Upon review of the record, this Court concludes that Ms. Graham has not established that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. The victim testified that Ms. Graham invited her over to her house and then prevented her from leaving for over an hour. The victim also testified that Ms. Graham escorted her to the steps that led from the back patio into the backyard. The victim testified that Ms. Graham then grabbed her by her hair, pulled her to the ground, and punched her in the face. Additionally, Deputy Hankins testified that he observed physical injuries to the victim's cheek and neck. The trial court admitted photographs of these injuries into evidence. Deputy Hankins also testified that the victim had dirt on her hands, which was consistent with her statement that Ms. Graham pulled her to the ground.

{¶22} Most of Ms. Graham's argument on appeal relies upon her version of the events, which the jury was not required to believe. *State v. McManaway*, 9th Dist. Wayne No. 20AP0046, 2022-Ohio-2086, ¶ 18, citing *State v. Straughan*, 9th Dist. Summit No. 29549, 2021-Ohio-1054, ¶ 34. Additionally, the fact that other evidence may have further corroborated the victim's version

of the events (e.g., dirt on the victim's clothes, marks on Ms. Graham's hands, or flattened grass) does not render Ms. Graham's conviction against the manifest weight of the evidence. *See In re J.T.*, 9th Dist. Summit No. 30223, 2022-Ohio-3466, ¶ 18 ("The fact that the State did not present additional evidence to corroborate the victim's testimony does not render her delinquency adjudication against the manifest weight of the evidence."). As this Court has stated, a jury is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony." *State v. Quinn*, 9th Dist. Medina No. 18CA0022-M, 2019-Ohio-3980, ¶ 18. The jury in this case chose to believe the victim's version of the events over Ms. Graham's version of events, which does not render Ms. Graham's conviction against the manifest weight of the evidence. *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13 ("We will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version."). Ms. Graham's second assignment of error is overruled.

III.

{¶23} Ms. Graham's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JOEY MARULLO, Assistant Prosecuting Attorney, for Appellee.