[Cite as *State v. Smith*, 2023-Ohio-4642.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                         No. 112115

    v.                           :

ANTONIO K. SMITH,                       :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART; VACATED IN PART;
                  AND REMANDED
**RELEASED AND JOURNALIZED:**  December 21, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653755-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Christine M. Vacha, Assistant Prosecuting
Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Antonio Smith ("Smith"), appeals from his convictions following a jury trial.  He raises the following assignments of error for review:

1. The trial court erred in denying Smith's motion for acquittal pursuant to Crim.R. 29 when the state failed to submit sufficient evidence for the crimes charged, denying the appellant due process.

2. Smith's convictions are against the manifest weight of the evidence depriving Mr. Smith of due process under the law.

3. The trial court erred when it failed to dismiss the gross sexual imposition conviction contained in Count 5 as being allied to the gross sexual imposition charge in Count 6, and thus violated Mr. Smith's rights under R.C. 2941.25 (allied offenses) and the double jeopardy clause of Art. I., Section 10, Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. Procedural and Factual History

{¶ 3} On October 16, 2020, Smith was named in a 23-count indictment, charging him with two counts of rape in violation of R.C. 2907.02(A)(1)(b) (Counts 1 and 2); five counts of rape in violation of R.C. 2907.02(A)(2) (Counts 3, 5, 7, 9, and 11); five counts of rape in violation of R.C. 2907.02(A)(1)(c) (Counts 4, 6, 8, 10, and 12); one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) (Count 13); five counts of gross sexual imposition in violation of R.C. 2907.05(A)(1) (Counts 14, 16, 18, 20, and 22); and five counts of gross sexual imposition in violation of R.C. 2907.05(A)(5) (Counts 15, 17, 19, 21, and 23). Each offense carried a sexually violent predator specification pursuant to R.C. 2941.148(A).

{¶ 4} Counts 1-13 corresponded to alleged incidents of sexual assault involving Smith's sister, Jane Doe 1 (d.o.b. 1998). Counts 14-17 corresponded to

alleged incidents of sexual assault involving Smith's sister, Jane Doe 2 (d.o.b. 2006). Counts 18-21 corresponded to alleged incidents of sexual assault involving Smith's cousin, Jane Doe 3 (d.o.b. 1994). Finally, Counts 22 and 23 corresponded to alleged incidents of sexual assault involving Smith's paternal aunt, Jane Doe 4 (d.o.b. 1978).

{¶ 5} The matter proceeded to a jury trial on August 24, 2022, where the following relevant facts were adduced.

{¶ 6} Smith, now 27 years old, is the oldest of 12 siblings, including his younger sisters, Jane Doe 1 and Jane Doe 2. As a child, Smith would often spend the night at his paternal grandmother's home with his siblings and cousins. During these occasions, a group of ten children or more would sleep in the common area of his grandmother's home.

{¶ 7} Jane Doe 1 was 24-years old at the time of trial. She testified that when she was growing up, she shared a "typical brother and sister relationship" with Smith. (Tr. 413.) Their relationship changed, however, when Smith began to engage in inappropriate behavior beginning when Jane Doe 1 was approximately nine or ten years old. Jane Doe 1 explained the first inappropriate encounter as follows:

> The first thing that I remember is I remember I was asleep, we were on the floor in my grandma's living room, I remember feeling [Smith] pull my pubic hairs. It was like a tug at it. When I woke up, I'm like confusion, what's going on. He was like, oh, I just wanted to see if that hurts.

(Tr. 414-415.)

{¶ 8} Jane Doe 1 testified that her relationship with Smith "went downhill" after this first encounter. During a subsequent sleepover at their grandmother's

home, Jane Doe 1 recalled waking up and feeling Smith rubbing her "butt" and "private area." (Tr. 419.) When Jane Doe 1 was approximately 11 years old, Smith put his fingers inside Jane Doe 1's vagina while she was sleeping. Jane Doe 1 recalled a similar incident during a sleepover when she was approximately 13 years old, stating,

> [A]nd I remember waking up and again, he was touching me, touching my private areas, and like I could feel him like playing with himself as he was touching me.

(Tr. 425.) Jane Doe 1 testified that Smith rubbed her inappropriately again the following night. On this occasion, Jane Doe 1 believed that Smith was "trying to put himself inside of [her]." (Tr. 427.) Shortly thereafter, Jane Doe 1 felt Smith ejaculate.

{¶ 9} According to Jane Doe 1, the abuse continued until she was approximately 18 or 19 years old. Jane Doe 1 admitted that she did not tell anyone about Smith's conduct when it first began because she was scared and was worried no one would believe her. She recalled disclosing Smith's conduct to one of her cousins. However, they did not tell an adult out of fear of getting in trouble.

{¶ 10} In 2020, Jane Doe 1 was having a conversation with her younger sister, Jane Doe 2, and asked whether Jane Doe 2 had ever been touched inappropriately before. At that time, Jane Doe 2 disclosed that Smith had engaged in such conduct with her when she was younger. Jane Doe 1 later had a similar conversation with her cousin, Jane Doe 3, who similarly stated that Smith had touched her inappropriately during sleepovers at their grandmother's home. Based

on this new information, Jane Doe 1 decided that it was necessary to tell her parents about Smith's past conduct.  The police were contacted several days later.

{¶ 11} Jane Doe 2 was 15 years old at the time of trial.  She testified that when she was younger, she and her siblings would have sleepovers at their grandmother's home.  When Jane Doe 2 was 13 years old, she was watching television on the floor in her grandmother's home when Smith touched her legs and ran his hand up to her "butt and [her] private." (Tr. 623-624.)  Jane Doe 2 explained that Smith touched her butt and the outside of her vagina while his hand was under her clothes.  Jane Doe 2 testified that she did not react or tell anyone about the incident because she was scared of her older brother.  On a separate occasion, Jane Doe 2 was sleeping on the couch when she awoke to Smith touching her legs and private area.  (Tr. 626-627.)  Again, Jane Doe 2 did not tell Smith to stop.  Nor did she immediately tell anyone about his conduct.  Jane Doe 2 maintained, however, that she told her sister, Jane Doe 1, about the inappropriate touching "a couple months" after the second incident occurred.  (Tr. 628.)  Jane Doe 2 stated that no member of her family was directing her testimony or otherwise telling her what to say about Smith.

{¶ 12} Smith's cousin, Jane Doe 3, who was 28 years old at the time of trial, testified that in 2020, she fell asleep with Smith on a couch located in their grandmother's home.  At some point, Jane Doe 3 woke up and felt Smith "touching" her.  (Tr. 668.).  Jane Doe 3 nudged Smith and told him to move over because he was too close.  Jane Doe 3 fell back asleep but later awoke with Smith "on top of [her]." (Tr. at *id*.)  Jane Doe 3 testified that she pushed Smith off of her and

immediately left her grandmother's home. Jane Doe 3 stated that she did not contact the police or disclose Smith's conduct to anyone because she "didn't think nothing of it." (Tr. 670.) Jane Doe 3 explained that she only shared the incident with a detective once a formal investigation was initiated following the disclosures of Jane Doe 1 and Jane Doe 2

{¶ 13} Smith's paternal aunt, Jane Doe 4, confirmed that it was common for Smith, his siblings, and his cousins to spend the night at their grandmother's house during weekends or summer breaks. In 2019 or 2020, Jane Doe 4 was sleeping next to Smith on the living room couch when she felt Smith touching her in between her legs. Jane Doe 4 testified that Smith continued to move his hands between her legs each time she attempted to move away from him. Jane Doe 4 stated that Smith's conduct made her feel uncomfortable. However, she did not disclose the incident to anyone until she learned that Smith had engaged in similar conduct with her nieces, Jane Doe 1 and Jane Doe 2

{¶ 14} Detective Kevin Smith ("Det. Smith"), of the Cleveland Police Department sex-crimes unit, testified that he was assigned to investigate the allegations of sexual abuse levied against Smith. In the course of his investigation, Det. Smith separately interviewed Smith as well as the alleged victims, Jane Doe 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4. Det. Smith testified that Smith denied the allegations of sexual abuse "which is obviously very common in interviewing a suspect." (Tr. 723.)

{¶ 15} At the close of the state's case-in-chief, the state agreed to dismiss Counts 5-12, 15, and 18-19 of the indictment. (Tr. 740, 749 and 768.) The state further sought to amend the dates alleged in Counts 14-17, and 22-23 to reflect the testimony of the state's witnesses, which the court granted with respect to Counts 14-17. Smith then moved the trial court for a Crim.R. 29 judgment of acquittal on the remaining counts. Following extensive arguments on the record, the trial court granted the motion to dismiss as to Counts 2, 3, and 23. (Tr. 772-773.) The counts were subsequently renumbered by the court to reflect the current offenses before the jury.[1]

{¶ 16} Smith testified on his own behalf. He confirmed that he frequently stayed at his grandmother's home and often had sleepovers with his siblings and cousins. Smith, however, adamantly denied engaging in any type of sexual contact with any of his family members, "whether it was at his grandmother's home or not." (Tr. 894.) Smith testified that he first learned about the allegations when his father confronted him, and subsequently held him at gunpoint, in October 2020. Smith stated that prior to October 2020, "nobody had made any suggestion that [he] had done anything inappropriate." (Tr. 903.) Smith testified that he was surprised to learn of the allegations, particularly when he, Jane Doe 1, and Jane Doe 3 went on vacation together in August 2019, and "carried on as usual" when they returned from their trip. (Tr. 905.)

---

[1] For the purposes of this appeal, we refer to the counts as originally charged in the indictment.

{¶ 17} At the conclusion of trial, Smith was found guilty of one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) (formerly Count 13), two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1) (formerly Counts 14, 16), and gross sexual imposition in violation of R.C. 2907.05(A)(5) (formerly Count 17). Smith was found not guilty of all remaining counts. In addition, the trial court later found Smith not guilty of the sexually violent predator specifications previously attached to former Counts 13, 14, 16, and 17. (Tr. 1057, 1079.)[2]

{¶ 18} On October 13, 2022, Smith was sentenced to a three-year period of community-control sanctions. He was classified as a Tier II sex offender.

{¶ 19} Smith now appeals from his convictions.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 20} In the first assignment of error, Smith argues the trial court erred when it denied his motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to support his convictions.

{¶ 21} Crim.R. 29(A) provides that a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion

---

[2] On July 21, 2023, the trial court issued a nunc pro tunc journal entry to correct various aspects of the original sentencing journal entry. However, the nunc pro tunc entry inaccurately reflects that Smith was found guilty of the sexually violent predator specifications attached to former Counts 14, 16, and 17. Furthermore, the nunc pro tunc entry inaccurately reflects that Smith was convicted under R.C. 2907.05(A)(L), as opposed to R.C. 2907.05(A)(1), for former Counts 14 and 16. The journal entry must be corrected nunc pro tunc to reflect what transpired on the record.

questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 22} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 23} "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Further, circumstantial evidence is not only sufficient, ""but may also be more certain,

satisfying, and persuasive than direct evidence.'"" *Id.* at ¶ 36, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 24} In this case, Smith was convicted of four counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), (4), and (5). The statute provides, in relevant part:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
>
> * * *
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
>
> (5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

R.C. 2907.05(A).

{¶ 25} As previously stated, former Count 13 related to conduct committed against Jane Doe 1, and alleged, pursuant to R.C. 2907.05(A)(4), that between August 12, 2007, to August 11, 2008, Smith "did have sexual contact, to wit: touched butt/vagina, with [Jane Doe 1], not his spouse, whose age at the time of the said sexual contact was under 13 years, to wit: [d.o.b. 1998]." (Formerly Count 13.) The

remaining convictions related to conduct committed against Jane Doe 2. Pursuant to R.C. 2907.05(A)(1) and (5), the state alleged that (1) Smith "did have sexual contact, to wit: touched butt/vagina, with [Jane Doe 2], not his spouse, by purposely compelling such person to submit by force or threat of force" (formerly Counts 14 and 16), and (2) Smith "did have sexual contact, to wit: touched butt/vagina, with [Jane Doe 2], not his spouse, and the ability of [Jane Doe 2] to resist or consent was substantially impaired because of a physical condition, and [Smith] knew or had a reasonable cause to believe that [Jane Doe 2]'s ability to resist or consent was substantially impaired because of a physical condition." (Formerly Count 17.)

{¶ 26} As applicable to each conviction, R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." The Ohio Revised Code does not define "sexual arousal" or "sexual gratification." However, R.C. 2907.01(B) "'contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.'" *State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 18, quoting *State v. Astley*, 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987); *see also In re Anderson*, 116 Ohio App.3d 441, 443, 688 N.E.2d 545 (12th Dist.1996). This court has recognized that

> [i]n determining whether sexual contact occurred, the trier of fact may infer from the evidence presented at trial whether the defendant's contact with the areas of the body outlined in R.C. 2907.01 was for the

purpose of sexual arousal or gratification. *Tate* at ¶ 19; *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991). The purpose of the contact may be inferred from the type, nature, and circumstances of the contact. *Tate* at ¶ 20, citing *Meredith*; *see also Ohio v. Coleman*, 8th Dist. Cuyahoga No. 102291, 2015-Ohio-4491, ¶ 7 (finding that purpose may also be inferred from the defendant's conduct as well as his or her personality). Accordingly, "[i]f the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Cobb* at 185.

*State v. Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 65.

{¶ 27} R.C. 2901.22(A) states that "[a]person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." *Id.* In turn, R.C. 2901.01(A)(1) defines "[f]orce" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The force element needed to prove the offense of gross sexual imposition is the same as it is for rape. *State v. Riggs*, 10th Dist. Franklin Nos. 04AP-1279 and 04AP-1280, 2005-Ohio-5244, ¶ 120. The Supreme Court of Ohio has stated that "[f]orce need not be overt and physically brutal, but can be subtle and psychological." *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). "A threat of force can be inferred from the circumstances surrounding sexual conduct * * *." *State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992).

{¶ 28} On appeal, Smith argues the "state failed to establish the essential element of force for all four counts" of gross sexual imposition. Smith further

contends that his conviction pertaining to Jane Doe 1 was improper because her "testimony failed to establish the essential element that the touching was done to sexually gratify himself or her." Lastly, Smith argues "the state failed to establish that Jane Doe 2 was asleep during the GSI that was alleged in [former Count 17], and that her sleeping was the substantial impairment under R.C. 2907.05(A)(5)."

{¶ 29} Preliminarily, we note that, contrary to Smith's assertion on appeal, the state was not required to prove the element of force for each gross-sexual-imposition conviction. The element of force only pertained to the allegations levied in former Counts 14 and 16. As previously discussed, R.C. 2907.05 contains various prohibitions against sexual contact, depending on the nature of the offender's conduct or the age and ability of the victim.

{¶ 30} After careful review of the record, we find the state presented sufficient evidence to support each of Smith's convictions. In this case, Jane Doe 1 extensively outlined the pattern of abuse Smith engaged in during sleepovers at their grandmother's home. As it pertains to the allegations contained in former Count 13 of the indictment, Jane Doe 1 testified that when she was between the ages of nine to eleven years old, she remembered waking up in the middle of the night to Smith "feeling on [her] butt and kind of rubbing [her] private area." (Tr. 419.) Jane Doe 1 explained that Smith "caress[ed] [her] butt" and then started "touching [her] down there." (Tr. 419.) Jane Doe 1 testified that this incident only involved inappropriate touching, although she maintained that Smith's conduct subsequently "changed from touching to something different." (Tr. 420.) Given the type, nature, and

circumstances of Smith's conduct, we find a reasonable juror could infer that Smith did touch the erogenous zone of Jane Doe 1, then less than 13 years of age, for the purpose of sexual arousal or gratification.

{¶ 31} Jane Doe 2 similarly testified that Smith touched her inappropriately over a span of several weeks during sleepovers at their grandmother's home. As it relates to the allegations of force or threat of force contained in former Counts 14 and 16, Jane Doe 2 testified that on separate occasions in 2020, Smith touched her buttocks and the outside of her vagina. On each occasion, Smith manipulated Jane Doe 2's clothing to touch her private area. (Tr. 624, 627.) Jane Doe 2 stated that she did not tell Smith to stop because she was "scared" of him because "he's older than [her]." (Tr. 624.) Jane Doe 2, who was 13 years old at the time of the incidents, explained that she looked up to her then 25-year old brother and viewed him as a "father figure." (Tr. 634.) Given the nature of Smith's relationship with Jane Doe 2 and the disparity in their ages and sizes, we find a reasonable juror could have concluded that Smith manipulated his position of trust to overcome Jane Doe 2's will by fear or duress. *See Eskridge*, 38 Ohio St.3d at 59, 526 N.E.2d 304 (the force need not be overt or physically brutal and that subtle or psychological pressure can cause a child victim to be overcome by fear or duress.); *State v. Scott*, 8th Dist. Cuyahoga No. 110744, 2022-Ohio-2768, ¶ 41, citing *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 11 (13-year-old victim); *State v. Dye*, 82 Ohio St.3d 323, 326, 695 N.E.2d 763 (1998).

{¶ 32} Finally, regarding former Count 17, Jane Doe 2 testified that the second incident of inappropriate touching occurred while she was sleeping on her grandmother's couch. It has been held that "sleep is considered a 'mental or physical condition' sufficient to substantially impair a victim's ability to resist unwelcomed sexual contact within the meaning of R.C. 2907.05(A)(5)." *State v. Quinn*, 9th Dist. Medina No. 18CA0022-M, 2019-Ohio-3980, ¶ 11, citing *State v. Porter*, 9th Dist. Medina No. 12CA0061-M, 2013-Ohio-3969, ¶ 19. Under these circumstances, we find a reasonable juror could have concluded that Smith engaged in sexual contact with Jane Doe 2 for the purpose of sexual arousal or gratification when he had reasonable cause to believe that Jane Doe 2's ability to resist or consent was substantially impaired.

{¶ 33} Viewing the foregoing evidence in a light most favorable to the state, we find the essential elements of R.C. 2907.05(A)(1), (4), and (5) were proven beyond a reasonable doubt.

{¶ 34} The first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 35} In the second assignment of error, Smith argues his convictions are against the manifest weight of the evidence. Smith contends that Jane Doe 1's testimony lacked credibility given her reputation for untruthfulness and her willingness to socialize with him after the alleged instances of sexual abuse occurred. Smith similarly argues that Jane Doe 2's testimony lacked credibility where she

testified that the two incidents of sexual contact occurred a week apart while the indictment alleged that the incidents occurred a month apart.

{¶ 36} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶ 37} A trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial. *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85; *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 100. Thus, "[a] conviction is not against the manifest weight of the evidence simply because the jury believed the testimony of the state's witnesses and disbelieved the defendant." *Id.*

{¶ 38} Upon reviewing the evidence presented at trial, we are unable to conclude that Smith's convictions are against the manifest weight of the evidence. In this case, the credibility of each alleged victim was widely explored on cross-examination and the jury was provided all relevant information to assess the veracity of their allegations against Smith. As evidenced by the findings of not guilty on several charged offenses, it is clear the jury carefully considered the evidence and the credibility of each witness when rendering its verdict. Furthermore, to the extent Smith challenges the disparity between the dates listed in the indictment and Jane Doe 2's testimony, the record demonstrates that the trial court granted the state's motion to amend the dates alleged in former Counts 14, 16, and 17 to "May of 2020." (Tr. 740, 743-744.) *See State v. Buchanan*, 2017-Ohio-1361, 88 N.E.3d 686, ¶ 22 (8th Dist.) ("The date and time of a rape is not an essential element of the offense."). *See also State v. Gus*, 8th Dist. Cuyahoga No. 85591, 2005-Ohio-6717, ¶ 6 ("[T]he state is given a certain amount of latitude in child sexual abuse cases and is not strictly held to proving that a crime occurred during a period set forth in the indictment. This is so partly because the specific time and date of the offense are not elements of the offense."); Ohio Jury Instructions, CR Section 413.07 (Rev. May 21, 2022) (When time is not essential to an offense, "[i]t is not necessary that the state prove that the offense was committed on the exact day as charged in the (indictment)(information)(complaint). It is sufficient to prove that the offense took place on a date reasonably near the date claimed.").

{¶ 39} Under the foregoing circumstances, we cannot say that "the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41.

{¶ 40} The second assignment of error is overruled.

### C. Allied Offenses of Similar Import

{¶ 41} In the third assignment of error, Smith argues the trial court erred by failing to merge his two convictions for gross sexual imposition as charged in former Counts 16 and 17 of the indictment. Smith contends that the two offenses arose from the same incident and, therefore, were allied offenses of similar import.

{¶ 42} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 43} In determining whether offenses are subject to merger for sentencing under R.C. 2941.25, courts evaluate three separate factors — the import, the conduct, and the animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraphs one and three of the syllabus. Offenses do not merge, and

a defendant may be convicted of and sentenced for multiple offenses if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, ¶ 25, 31.

{¶ 44} Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. Thus, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id*. at ¶ 26. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.*

{¶ 45} Offenses are committed separately within the meaning of R.C. 2941.25(B) if "'one offense was complete before the other offense occurred, * * * notwithstanding their proximity in time and that one [offense] was committed in order to commit the other.'" *State v. Woodard*, 2d Dist. Montgomery No. 29110, 2022-Ohio-3081, ¶ 38, quoting *State v. Turner*, 2d Dist. Montgomery No. 24421, 2011-Ohio-6714, ¶ 24. Thus, "'when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts.'" *Id*., quoting *State v. Mooty*, 2014-Ohio-733, 9 N.E.3d 443, ¶ 49 (2d Dist.).

{¶ 46} For purposes of R.C. 2941.25(B), animus has been defined as "'"purpose or more properly, immediate motive."'" *State v. Priest*, 8th Dist. Cuyahoga No. 106947, 2018-Ohio-5355, ¶ 12, quoting *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, ¶ 34, quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). "'If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.'" S*tate v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 12, quoting *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13. "Animus is often difficult to prove directly but must be inferred from the surrounding circumstances." *Id.*, citing *State v. Lung*, 12th Dist. Brown No. CA2012-03-004, 2012-Ohio-5352, ¶ 12.

{¶ 47} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct" and "an offense may be committed in a variety of ways." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26, 30. "'[T]his analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct — an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 (plurality opinion per Brown, C.J.).

{¶ 48} We review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25. *State v. Bailey*, Slip Opinion No. 2022-Ohio-

4407, ¶ 6, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1.

{¶ 49} In this case, Smith's allied offense arguments are limited to his convictions for gross sexual imposition pursuant to R.C. 2907.05(A)(1) and (5) as charged in former Counts 16 and 17 of the indictment. After careful consideration, we agree with Smith's assertion that these offenses are allied offenses of similar conduct. Former Counts 16 and 17 were committed simultaneously with the same purpose (sexual gratification) and stemmed from a singular incident of sexual contact, namely Smith's act of touching Jane Doe 2's erogenous zone while she was sleeping on her grandmother's couch. The offenses resulted in a single, identifiable harm to Jane Doe 2, but relied on alternative theories of liability for the same course of conduct. Although Smith did not raise the allied offense issue below, we find the trial court committed plain error by separately sentencing Smith on former Counts 16 and 17. *See* Crim.R. 52.

{¶ 50} Accordingly, we sustain Smith's third assignment of error as to former Counts 16 and 17. The sentences imposed on these counts are vacated, and the case is remanded for resentencing. On remand, the state has the right to elect which offense to pursue at sentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 21.

{¶ 51} Judgment affirmed in part, sentence vacated in part. The matter is remanded to the trial court for the court to merge the allied offenses of similar import before resentencing Smith on the count elected by the state, and to issue a

nunc pro tunc journal entry to reflect Smith's convictions under R.C. 2907.05(A)(1) and the court's finding of not guilty on the sexually violent predator specifications attached to former Counts 14, 16, and 17.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence, resentencing, and the issuance of a nunc pro tunc entry..

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LISA B. FORBES, J., CONCUR